OPINION OF THE COURT
William P. Polito, J.
Relief Requested
Petitioner manufacturer, Alfa Leisure, seeks to vacate the Lemon Law compulsory arbitration award in its entirety, or an evidentiary trial before this court pursuant to CPLR 410, or a rehearing before the arbitrator pursuant to CPLR 7511 (d).
Respondents cross-move for an order pursuant to CPLR 7510 confirming the award of the arbitrator Richard C. Nettle dated September 11, 2006 and attorney’s fees.
Decision
Petitioner’s motion to vacate is denied. Respondent’s cross motion to confirm the arbitration award is granted. Attorney’s fees to respondent are granted in the amount of $2,000. Arbitrator’s Decision
The respondents purchased a new 2005 Alfa See Ya motor home manufactured by petitioner from its authorized dealer, Ballantyne, by contract signed on September 11, 2004, and amended on September 18, 2004, the date of delivery. The contract provided that the amount to be paid exclusive of *192 trade-in allowances of $82,000, fees and other charges of $80, was $122,399. The 8% sales tax thereon amounted to $10,090.92 and the mileage on the vehicle was 6,523 miles.
Upon respondents’ complaint filed July 12, 2006, and after a hearing, the arbitrator determined that the Lemon Law warranties (General Business Law § 198-a) applied, were validly invoked after four attempts to repair, and the value of the motor home was and continued to be substantially impaired, for which the respondents were entitled to return of the $122,000 plus the trade-in allowances stated in the contract of $82,000, plus $80 for auto related fees, $250 for suit filing fees, and $10,090.92 taxes, less mileage of $13,306.99 for a payback figure from the manufacturer of $201,121.93. Apparently, the arbitrator excluded the $399 cost of the Diamond Fusion option, even though a sales tax was computed and paid thereon.
Petitioner’s Contentions
The petitioner seeks to set aside the arbitrator’s award on the following grounds:
1. (a) That the statutory presumptions allowing invocation of the Lemon Law after four unsuccessful attempts for motor vehicles does not apply to motor homes.
(b) That, even if the Lemon Law was validly invoked, there was insufficient evidence for the arbitrator to find that the motor home was substantially impaired.
2. That, even if the Lemon Law was validly invoked, and the motor home was substantially impaired, the manufacturer is not responsible due to its limited warranty in time, and its exclusion of responsibility over those items which the arbitrator found constituted substantial impairment.
3. That in computing the amount due the arbitrator credited the agreed trade-in allowances as stated in the contract, rather than the actual market value of the trade-in.
1. No Errors of Law (a) Reasonable Attempts
Petitioner contends that four attempts to repair by its authorized dealer was not sufficient to invoke the Lemon Law in that the statutory presumption of four attempts applicable to motor vehicles does not apply to motor homes. The petitioner does not state what number of attempts beyond four would be required before the unsuccessful attempts became unreasonable, and allow the buyer to invoke the Lemon Law. Nor does it provide any basis as to why the motor vehicle portion of the motor home *193 would require a different standard from a motor vehicle, especially since the statute has already excluded any problems related to the living facilities portion from application of the law. (General Business Law § 198-a [n] [4].)
Law and Rationale
Under General Business Law § 198-a (n), special additional provisions are enumerated for motor homes. The Lemon Law excludes the living facilities portion of motor homes, including, but not limited to, “the flooring, plumbing system and fixtures, roof air conditioner, furnace, generator, electrical systems other than automotive circuits, the side entrance door, exterior compartments, and windows other than the windshield and driver and front passenger windows” (General Business Law § 198-a [n] [3]).
Section 198-a (n) (4) allows a consumer to invoke the Lemon Law if within the
“first eighteen thousand miles ... or during the period of two years following the date of original delivery ... its authorized dealers . . . are unable to repair or correct any covered defect or condition which substantially impairs the value of the motor home to the consumer after a reasonable number of attempts” (emphasis added).
Section 198-a (d) states that after four or more attempts to repair the vehicle unsuccessfully, the consumer may invoke the Lemon Law, although the respondent may still be allowed to prove that, notwithstanding the number of unsuccessful repair attempts, the defect or condition still did not substantially impair the vehicle’s value. The Court of Appeals has upheld this statutory scheme, including the presumption that four unsuccessful attempts are sufficient to invoke the Lemon Law process. (Matter of DaimlerChrysler Corp. v Spitzer, 7 NY3d 653 [2006].)
While it is true, as petitioner points out, that the special provision of section 198-a (n) applicable to motor homes does not define four attempts as presumably reasonable, section 198-a (n) (1) does make clear that where its provisions are not inconsistent, the other subdivisions of 198-a would be applicable, including section 198-a (d).
Accordingly, reading section 198-a (n) in conjunction with section 198-a (d), which are not inconsistent, requires a determination that a reasonable number of attempts undertaken is four or more regardless of whether it’s a motor vehicle or motor *194 home. Nor does petitioner provide any persuasive rationale as to why the legislators intended or would intend such a distinction from the stated statutory presumption of section 198-a (d). Monroe County Supreme Court Justice Rosenbaum recently came to the same conclusion in Alfa Leisure, Inc. v Leaty (Index No. 06/11712).
Therefore, the court does not find a misapplication of the law by the arbitrator in undertaking the case after four unsuccessful attempts.
(b) Sufficient Evidentiary Basis for Arbitrator’s Factual and Legal Determinations
Upon review of the record the arbitrator considered the facts as submitted. The parties were given full opportunity to raise relevant issues. Those issues were considered and addressed by the arbitrator as set forth in the transcript record thereof. Respondents submitted proof that there were four or more repair attempts (six attempts documented by the consumer at least four times within two years) to repair the driver compartment heating system which problem still existed at the time of the arbitration. The heating issue caused the windshield and side windows to frost over and fog up. There were also five attempts to repair the windshield wipers before they were finally repaired. Those problems are covered by the Lemon Law under General Business Law § 198-a (n) for motor homes and not excluded by the living facilities portion of the motor home.
Although some of the other problems which were established, i.e., slide out/roof leaks, which were excluded under the Lemon Law as defects associated with the living facilities, the repair attempts regarding the heating problem, which was not so excluded, were sufficient alone to meet the “reasonable” attempts to repair standard. The testimony of respondents also established a sufficient basis for the arbitrator to conclude that the heating defect substantially impaired the value of the motor home. Respondents presented substantial oral evidence to the arbitrator that the slide out problems caused structural issues which affected the driving compartment of the motor home, including water and air seepage into the covered portion of the vehicle resulting in a possibly covered defect. Petitioner had full opportunity to and did submit evidence in support of its contentions that the presumptive four attempts level was not met, and even if it was, that there was no substantial impairment.
On the other hand, there was also “adequate evidence in the record” for the arbitrator to determine that after the dealership *195 exercised a reasonable number of attempts at repairing the subject covered items, mainly the heating system and possible structural problems, it was unsuccessful, and those problems still exist, and substantially impair the value of the motor home.
Accordingly, the arbitrator’s hearing cannot be said to be a violation of due process, nor his decision to be without a rational basis, arbitrary, capricious, or unsupported by the evidence. (DaimlerChrysler Corp. v Spitzer, supra; also Motor Veh. Mfrs. Assn. of U.S. v State of New York, 75 NY2d 175 [1990]; Matter of Utica Mut. Ins. Co. [Selective Ins. Co. of Am.], 27 AD3d 990 [3d Dept 2006].)
2. Manufacturer’s UCC Warranty Does Not Limit Lemon Law Warranties
The petitioner upon sale issued a one-year express warranty under the UCC, and excluded from the warranty certain component parts, which it purchased from others in the construction of its motor home and, for which, the buyer was given a direct warranty against the manufacturers of those parts. The petitioner contends that the impairment of the motor home was caused by defects of those other warrantors, and, therefore, it cannot be held liable under the Lemon Law warranties. The warranty does not explicitly exclude the Lemon Law.
The petitioner did not show that it was not liable under its own express UCC warranty. However, even if it had, and the defects were caused by other makers of the component parts of the motor home, it would not absolve the petitioner manufacturer of responsibility under the Lemon Law warranties.
The Lemon Law warranties for which the manufacturer is responsible apply to the whole motor vehicle portion of the motor home sold regardless of who made the individual components contained therein. The petitioner does not claim and has introduced no evidence that the dealer after sale to it made unauthorized modifications for which the manufacturer should not be held liable. (Safari Motor Coaches v Corwin, 162 Misc 2d 449 [Sup Ct, Saratoga County 1994].) The Lemon Law warranties create a separate duty independent of the manufacturer’s express UCC warranty. If the manufacturer’s UCC express warranty is inconsistent with the Lemon Law warranties, then the latter supersedes the former. (Breasett v Sayville Ford, 129 Misc 2d 1090 [Suffolk Dist Ct 1985].)
The determination in Matter of General Motors Corp. v Lee (193 AD2d 741 [2d Dept 1993]), cited by petitioner to support *196 its position, is inapposite, and consistent with the above principles.
Accordingly, the arbitrator properly applied the Lemon Law despite the manufacturer’s UCC express warranty.
3. Proper Amount For Trade-In Allowance
General Business Law § 198-a (n) (4) states that if the motor home cannot be repaired after a reasonable number of attempts,
“the motor home manufacturer, at the option of the consumer, shall replace the motor home with a comparable motor home, or accept return of the motor home from the consumer and refund to the consumer the full purchase price, . . . and any trade-in allowance plus fees and charges as well as the other fees and charges set forth in paragraph one” (emphasis added).
The language is identical to the relief afforded to owners of motor vehicles. (§ 198-a [c] [1].)
Petitioner, in its most compelling argument, submits, and there was extensive testimony before the arbitrator, that at the time of sale, the dealer believed the trade-in was worth $35,000. Without disclosure thereof to the respondents, the dealer allowed $82,000 for the trade-in, thus, increasing the purchase price by $47,000 from $157,399 to $204,399, the manufacturer’s suggested retail price (Kinney arbitration transcript at 19-21).
The dealer testified that it always so increased the value of trade-in in that manner in order to bring the contract sales price to the manufacturer’s suggested retail price for insurance purposes. (Kinney arbitration transcript at 21, lines 7-10.)
The buyers believed the trade-in was properly valued at $82,000, and the full cost was $204,399. (Arbitration transcript at 25-33.) The buyers argue and the dealer admits that the buyers were not complicit in, nor did they have knowledge of, that practice. (Arbitration transcript at 21-23, 26, 27.)
Although the arbitrator understood the petitioner’s contention that using the agreed trade-in allowance as stated in the contract would result in a $47,000 increase to the buyers beyond what the dealer believed to be the trade-in’s actual market value, he still applied the stated, agreed contract trade-in value in arriving at his final determination. (See arbitration transcript at 34, lines 9-12, 32.)
*197 Only one trial level case has been submitted on point (Monaco v Caliguire, Sup Ct, Schenectady County 2005, Reilly, Jr., J., Index No. 2004-1573).
In that case, the buyer agreed that the true, agreed trade-in allowance had been inflated in the written contract. The court held the complicit buyer to recovery of his lower, agreed trade-in allowance in accordance with the statutory language and the intent of the statute in determining the pay back figure.
However, here the situation is different. The parties disagree on what they bargained for and what the agreed trade-in allowance was. The arbitrator accepted the buyer’s version.
There was ample testimony in the record to support that determination and it cannot be said to be arbitrary, capricious, or without a rational basis.
The statutory language requiring a credit for “any trade-in allowance” is unambiguous, and clearly requires the arbitrator to use that trade-in allowance agreed to between the buyer and seller. There is nothing in the section to indicate that the arbitrator should apply the actual fair market value of the trade-in at time of sale. (DaimlerChrysler, supra at 661.) Accordingly, the arbitrator did not misapply the law in using the “trade-in allowances” agreed to between the parties and stated in the contract.
4. Attorney’s Fees
The court awards respondents’ attorney $2,000 in attorney’s fees based upon his detailed affidavit and time journal.